Case 1:22-cv-10649-DJC   Document 1   Filed 04/29/22   Page 1 of 12

# IN THE UNITED STATES DISTRICT COURT
# IN THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER CONNOR McCLAIN, | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF** |
| CAPE AIR, | |
| Defendants. | |

## INTRODUCTION

1. This suit seeks contract damages stemming from employment agreements of Defendant Cape Air provided to its former employee Christopher Connor McClain.

## JURISDICTION AND VENUE

2. This court has subject-matter jurisdiction under 29 U.S.C. § 216 (Fair Labor Standards Act; 18 U.S.C. § 1595 (Trafficking Victims Protection Act); 28 U.S.C. § 1331 (federal question jurisdiction).

3. This court has jurisdiction under 28 U.S.C. § 2201 to declare the rights of the respective parties in the matters addressed below.

4. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over all state law claims because each state law claim arose out of the same set of facts and is so related to the federal law claims that it forms part of the same case or controversy.

5. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this action occurred in the District of Massachusetts.

## PARTIES

6. Plaintiff CHRISTOPHER CONNOR McCLAIN began employment with Defendant Cape Air on or about January 25, 2021 and was employed until or about April 27, 2021.

7. From approximately January 25, 2021 through April 27, 2021, Plaintiff Connor McClain was "employed" by Cape Air, as that term is used in 29 U.S.C. § 201, et. seq. and was employed in an "occupation", as that term is used in M.G.L. ch. 151 § 1.

8. Defendant HYANNIS AIR SERVICE, D.B.A. Cape Air, is a Massachusetts corporation headquartered in Hyannis, Massachusetts.

## FACTUAL ALLEGATIONS

### FAA Pilot Certification

9. The Federal Aviation Administration (hereafter "FAA") is the federal agency responsible for issuing licenses and certificates to pilots. The FAA issues various categories of pilot licenses, each entitling a pilot to operate different categories of aircraft under different circumstances.

10. The Airline Transport Pilot (hereafter "ATP") certificate is widely considered to be the highest achievement of pilot certification under the FAA system. The ATP certificate qualifies its recipient to pilot commercial air flights.

11. To obtain an ATP certificate, an applicant must pass the ATP practical test.

2

12. With only few exceptions not applicable to this action, a prospective ATP-certified pilot must first achieve 1,500 hours of total flight time before being eligible to take the ATP practical test. *See* 14 C.F.R. §§ 61.159, 61.160.

13. With only few exceptions not applicable to this action, a prospective ATP-certified pilot must also have already attained a lower-level FAA certificate or obtained experience as a military pilot before being eligible to take the ATP practical test.

14. Upon information and belief, Defendant Cape Air maintains an FAA-certified training program for aspiring ATP pilots who have some prior flight experience but have not attained the 1,500 flight hours required for ATP certification.

15. Cape Air hires aspiring ATP-certified pilots who have some prior flight experience. Prior to attaining ATP certification, these employees have the title of First Officer.

16. Only after attaining ATP certification, a Cape Air pilot is called a Captain.

**Cape Air Recruits New Pilots During the COVID-19 Pandemic**

17. Since 1989, Defendant Cape Air has operated commercial flights among smaller destination cities throughout the United States and Caribbean destinations.

18. In late 2019, Cape Air expanded its fleet with the purchase of new aircraft. Upon information and belief, this expansion required the company to recruit and hire additional pilots.

19. Prior to the COVID-19 pandemic, the commercial airline industry was already experiencing a shortage of FAA-certified airline pilots.

3

20. Upon information and belief, Defendant Cape Air sought to address this perceived challenge by offering employment to pilots – such as Plaintiff – who had some prior flight experience but lacked the necessary 1,500 hours to become ATP certified.

21. Shortly after acquiring the new aircraft, the COVID-19 pandemic resulted in declined air travel. Upon information and belief, Cape Air experienced an even steeper decline in air passengers than other airlines.

22. For example, while nationwide commercial air travel declined by approximately 60% during March and April of 2020, Cape Air experienced a 90% decline on many of its routes.

23. Consequently, Defendant Cape Air cancelled many of its flights during 2020 and 2021. For example, upon information and belief, Cape Air ordinarily operates 100 flights out of the Martha Vineyard airport during the popular spring and summer months. During certain months throughout 2020, the airline cancelled more than half of those flights.

24. Despite this reduction, Defendant Cape Air embarked on an aggressive recruitment program during late 2020. Cape Air promised aspiring ATP-certified pilots that – upon being hired – the company would give them enough flight time to attain ATP certification.

**Cape Air Enters into Illusory Contracts with Plaintiff**

25. Plaintiff entered into such an employment contract during late 2020.

4

26. In late 2020 and early 2021, hiring personnel at Cape Air were aware that the company was operating with reduced flight schedules.

27. Defendant Cape Air presented Plaintiff with an employment contract.

28. Defendant Cape Air did not invite Plaintiffs to make a counter-offer.

29. Plaintiff signed employment contracts that stated the following: "[Cape Air] commit[s] to providing you the necessary experience to successfully obtain your ATP certificate and qualify you as a Captain for Cape Air."

30. Plaintiff had already attained several hundred hours of flight time prior to being offered employment by Cape Air. Consequently, Cape Air needed to ensure only that Plaintiff be given the opportunity to fly the number of additional hours needed for Plaintiff to attain the 1,500 hours required by the above-described FAA regulations.

31. In exchange for receiving the flight time necessary to complete his 1,500 hours, Plaintiff contractually agreed to work at a lower hourly rate than Plaintiff would otherwise have been able to earn working for a different employer.

32. Plaintiff agreed to work at the then-applicable Massachusetts minimum hourly wage and, at times, for an hourly wage just slightly above the applicable minimum wage.

33. As part of the employment contract, Plaintiff agreed to work for Defendant Cape Air as a captain for at least 15 months *after* attaining ATP certification.

34. As part of the employment contract, Plaintiff agreed to "repay" $30,000 to Defendant Cape Air for "costs and training investment in [his] training" in the event that Plaintiff resigned prior to serving at least 15 months as a captain for Cape Air.

5

35. Plaintiff never received a loan in any amount from Defendant Cape Air.

36. Under applicable FAA regulations, Plaintiff was prohibited from working for Cape Air in the capacity of a captain unless he obtained ATP certification.

37. Plaintiff, in turn, relied upon Cape Air to provide him the necessary flight hours to attain ATP certification.

38. At the time of offering employment to Plaintiff, Cape Air knew that Plaintiff could fulfil his stated obligations under the contract only if Cape Air supplied him the necessary flight hours.

39. Shortly after beginning employment with Defendant Cape Air, Plaintiff realized that the company did not intend to offer him enough flight hours to become ATP-eligible.

40. Upon information and belief, a comparable FAA-certified pilot training program offers approximately 80 hours per month of qualifying flight time.

41. By contrast, Plaintiff Connor McClain attained just ten qualifying flight hours during three months of employment with Cape Air.

42. Throughout their employment, Plaintiff was willing to fly Cape Air aircraft a longer number of hours, under the supervision of more experienced Cape Air employees. However, Cape Air offered Plaintiff only a limited numbers of flight hours.

43. Likewise, Cape Air did not on-board Plaintiff in a timely manner, instead, as a result of delays, Plaintiff spent months waiting for training to finish so he could finally start gaining flight hours.

44. Following the end of the Plaintiff's employment with Cape Air on or about April 27, 2021, Cape Air has demanded "repayment" the $30,000 from Plaintiff.

45. Plaintiff was informed that if Cape Air did not receive prompt payment, it would "begin legal proceedings."

46. At no point during Plaintiff's employment with Cape Air could Plaintiff have worked for Cape Air as a Captain.

47. Following receipt of Cape Air's demand, Mr. McClain paid Cape Air $30,000.

## COUNT I
## 29 U.S.C. § 216
## Violation of Federal Minimum Wage under the FLSA

48. The allegations above are incorporated by reference in this Count.

49. Under this count, Plaintiff Connor McClain seeks statutory damages and liquidated damages.

50. At all times relevant herein, Defendant Cape Air was an employer of Plaintiff, per 29 U.S.C. §§ 203, 206.

51. At all times relevant herein, Plaintiff was employed by Defendant Cape Air, per 29 U.S.C. §§ 203, 206.

52. At all relevant times, Plaintiff was engaged in commerce while employed by Defendant Cape Air.

53. The Fair Labor Standards Act requires that minimum wages be paid finally and unconditionally to the employee. An employee who is required by their employer to kick back, directly or indirectly, whole or part of the wage that was previously

delivered to the employee is not considered to have been paid the wage in the first instance. *See* 29 C.F.R. § 531.35.

54. Plaintiff Connor McClain was paid by Defendant Cape Air in excess of the minimum hourly wage required by 29 U.S.C. § 206. However, immediately following Plaintiff McClain's decision to resign his employment, Defendant Cape Air demanded that Plaintiff McClain pay it $30,000. Plaintiff McClain complied with this demand. As a result, the wages that had been previously paid to Plaintiff McClain were not made finally and unconditionally.

55. Plaintiff McClain's wages fell below the federal minimum wage as a direct result of this kick back.

## COUNT II
## 18 U.S.C. § 1595
## Trafficking Victims Protection Act

56. The allegations above are incorporated by reference in this Count.

57. The Trafficking Victims Protection Act ("TVPA") allows a victim to sue for damages if his or her labor was obtained by means of coercion, including by means of legal coercion.

58. The TVPA prohibits an employer from obtaining labor by the abuse or the threatened abuse of law or legal process. *See* 18 U.S.C. § 1589.

59. Shortly after beginning to work for Defendant Cape Air, Plaintiff discovered that Defendant had no intention of complying with its bargain to provide Plaintiff with the

necessary number of FAA-qualifying flight hours. However, Plaintiff as aware that he had signed a contract purporting to require Plaintiff to pay an exorbitant sum as a penalty for resigning.

60. Upon information and belief, Defendant Cape Air required Plaintiff to sign a contractual provision requiring Plaintiffs to pay a penalty for leaving their employment because Cape Air desired to keep each Plaintiff working at superficially low wages.

61. Upon information and belief, Defendant Cape Air required Plaintiff to sign a contractual provision requiring Plaintiff to pay a penalty for leaving his employment because Cape Air believed that if faced an imminent shortage of certified ATP pilots and that, consequently, its legal coercion of Plaintiff was intended to benefit Cape Air financially.

62. Requiring an employee to sign a contract, as a condition of employment, that purports to require an employee to pay $30,000 as a penalty for resigning before a date certain is tantamount to a threatened abuse of law.

63. This was the intention of Defendant Cape Air, and it was the result.

64. Cape Air actually threatened legal proceedings when it demanded repayment from Plaintiff.

### COUNT III
### Massachusetts General Laws ch. 151 §§ 1, 20
### Violation of State Minimum Wage

65. The allegations above are incorporated by reference in this Count.

9

66. Under this count, Plaintiff Connor McClain seeks statutory damages and treble damages.

67. The Massachusetts Minimum Fair Wage law allows employers to deduct from an employee's wages only for specific items. An employer is expressly prohibited from separately charging or billing an employee for amounts not otherwise allowed as deductions. *See* 454 CMR 27.00.

68. The $30,000 that Defendant Cape Air charged to Plaintiffs is not among the narrow category of things for which deductions are permitted under M.G.L. ch. 151 and the implementing regulations. Consequently, the amount billed to, and actually paid by Plaintiff, brought his wages unlawfully below the state minimum wage.

### COUNT IV
### Breach of Contract

69. The allegations above are incorporated by reference in this Count.

70. Under this Count, Plaintiff Connor McClain seeks contract damages in the amount of $30,000 and a declaration that he did not breach the underlying contract.

71. Under this Count, Plaintiff seeks a declaration that Defendant Cape Air breached the contract provision requiring Cape Air to "provide [each Plaintiff] . . . the necessary experience to obtain your ATP certificate."

72. As applicable herein, the contractual agreement entered into by Defendant Cape Air and Plaintiff states that if the employee resigns "prior to completing fifteen (15)

months of service as a Captain with Cape Air, you will be required to repay . . . thirty thousand dollars ($30,000)."

73. Plaintiffs resigned prior to <u>initiating</u> service as a Captain.

74. Under the applicable term of the contract, the $30,000 "repayment" provision triggers only if Plaintiff resigns from Cape Air while serving as a captain.

75. Plaintiff was never employed as a captain. Indeed, applicable federal law prohibited Plaintiffs from working for Cape Air as a Captain at the time he resigned his employment.

**COUNT V**
**Unjust Enrichment/Quantum Meruit**

76. The allegations above are incorporated by reference in this Count.

77. In the alternative to Count IV, above, Plaintiff alleges that the above-described contracts entered into by Plaintiff and Defendant Cape Air did not create a legally-enforceable agreement under Massachusetts law.

78. The contract purports to impose a substantial consideration on the part of Plaintiff and an insubstantial promise on the part of Defendant Cape Air. The contract imposes no specific obligation on Cape Air that a court could enforce, and therefore the contract's lack of mutuality renders the contract unenforceable.

79. Consequently, Plaintiff is entitled to seek restitution damages. Put differently, Plaintiff is entitled to unjust enrichment damages.

11

# **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Court grant it the following relief:

A. Declaratory relief under Count IV;

B. Compensatory damages in an amount to be determined at trial;

C. Unpaid minimum wages, liquidated damages, and/or treble damages under 29 U.S.C. § 216 & M.G.L. ch. 151;

D. Reasonable attorneys' fees under 18 U.S.C. § 1595(a);

E. Reasonable attorneys' fees under 29 U.S.C. § 216(b);

F. Costs of this action; and

G. Any other relief that this Court deems appropriate.

                                        Respectfully submitted,
                                        CHRISTOPHER CONNOR McCLAIN,

                                        By his attorney,
                                        /s/ *Elijah Bresley*_____
                                        Emily Smith-Lee, Esq. (BBO#634223)
                                        esmithlee@slnlaw.com
                                        Elijah Bresley, Esq. (BBO#691092)
                                        ebresley@slnlaw.com
                                        46 South Main St.
                                        Sharon, MA 02067
                                        (781) 784-2322

March 31, 2021