IN THE UNITED STATES DISTRICT COURT
IN THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER CONNOR McCLAIN, <br> DENNIS ABRAMOV, <br> MILES COLLINS, <br> JEFFREY BUTLER HANSON, JR., <br> RICKY LeBLANC, <br> SAMUEL SHEPHERD <br> WILLIAM TENNANT, <br> OHIANA NEGRETE, <br> JOSE MORA, <br> NATHAN BARNES, <br> STEVEN MORTON, and <br> DANIEL BIANCA <br><br>         Plaintiffs, <br><br> v. <br><br> CAPE AIR, <br><br>         Defendant. | Case No. 1:22-cv-10649-DJC |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO SEVER**

**I.      INTRODUCTION**

The Plaintiffs' claims in this case arise from virtually identical employment agreements and promissory notes that the Plaintiffs each signed with Defendant Cape Air. The relief sought by all Plaintiffs is based on their common contention that the agreements are unenforceable, and that should the Defendant attempt to enforce them it would result in a violation of both state and federal minimum wage laws and of state and federal anti-trafficking laws. A subset of the Plaintiffs also contends that, to the extent that the employment agreements are enforceable, they are entitled to relief based on the Defendant's breach of those agreements.

In its Motion to Sever, the Defendant argues that – despite the nearly identical employment agreements – the Plaintiffs' claims are not sufficiently related to meet the permissive joinder rules of Fed. R. Civ. P. 20(a)(1). More specifically, the Defendant contends that hiring multiple employees for identical positions and identical contracts does not constitute a "series of transactions" within the meaning of Fed. R. Civ. P. 20(a). However, as set forth in more detail below, such similar employment practices do in fact meet the "series of transactions" standard, joining the Plaintiffs at this point in the proceeding will allow for the more efficient use of judicial resources, and does not prejudice the Defendant. As a result, the Defendant's motion should be denied.

## II.  FACTUAL BACKGROUND

The facts in this section are taken from the Plaintiffs' Amended Complaint. In late 2019, Cape Air began to recruit and hire additional pilots as it expanded its fleet of aircraft. Am. Compl. 40. As part of this recruitment effort Cape Air offered employment to pilots who had some prior flight experience but lacked the necessary 1,500 hours required by FAA regulations to become ATP certified and serve as a captain on a commercial passenger airline. Am. Compl. 42. The Defendant promised these newly hired pilots that the company would provide enough flight time to attain ATP certification—although the agreements lacked any explicit time frame within which the Defendant was required to complete this obligation. Am. Compl. 46, 52, 67-70.

Between August 2019 and August 2020, each of the Plaintiffs (except for Abramov) signed an employment agreement that provided that "[Cape Air] commit[s] to providing you the necessary experience to successfully obtain your ATP certificate and qualify you as a Captain for Cape Air."[1] Am. Compl. 6-29, 52. All Plaintiffs (except for Abramov) had already attained

---

[1] Plaintiff Dennis Abramov had already achieved 1,500 hours of flight time prior to beginning his employment with Cape Air, although he had not yet gained his APT certification. Am. Compl. 58, 80.

several hundred hours of flight time prior to their employment by Cape Air but had not yet achieved the FAA-required 1,500 hours. Am. Compl. 53. The Plaintiffs agreed to work for Cape Air for the then-applicable Massachusetts minimum wage, or an amount slightly above the minimum wage, an amount that was significantly lower than they might have been able earn from a different employer, in exchange for the opportunity to gain the required flight hours from the Defendant. Am. Comp. 54-55.

As part of these nearly identical employment agreements, each of the Plaintiffs agreed to work for Defendant Cape Air *as a captain* for a period of time ranging from 12 months to 18 months *after* attaining ATP certification. Am. Compl. 56, 58. Each of the Plaintiffs also agreed to "repay" $30,000 to Defendant Cape Air if that Plaintiff resigned prior to serving the designated period of time as a captain for Cape Air. Am. Compl. 57, 59. Plaintiffs were required to "repay" this amount even though the cost of ATP certification is less than $10,000. Am. Compl. 81. Under applicable FAA regulations, however, Plaintiffs were prohibited from working as a captain unless they had obtained ATP certification, which they could not do until they were provided with the required 1,500 hours of flight time. Am. Compl. 63. Plaintiffs therefore relied upon Cape Air to provide them the necessary flight hours to attain ATP certification and fulfil their purported obligations to Cape Air. Am. Compl. 53, 64. At the time of offering employment to each of the Plaintiffs, Cape Air knew that Plaintiffs could fulfil their obligations under the contract only if Cape Air supplied to each Plaintiff the necessary flight hours. Am. Compl. 65.

---

His initial agreement with Cape Air included an agreement that he work for 12 months without the $30,000 penalty. But Cape Air later required him to sign a promissory note that required him "repay" $30,000 to Cape Air for training costs if he resigned prior to serving at least 12 months as a captain. Am. Compl. 59. Under this promissory note, Cape Air's obligation to train Plaintiff Dennis Abramov was identical to the other Plaintiffs. Am. Compl. 60.

Cape Air failed to provide sufficient flight hours for Plaintiffs Christopher Connor McClain, Miles Collins, Ricky LeBlanc, Samuel Shepherd, Ohiana Negrete, Daniel Bianca, Steven Morton, and William Tennant to have the opportunity to meet the FAA's 1,500 hour requirement for ATP certification.  Am. Comp. 75.  Therefore, at no point during any of these Plaintiffs' employment with Cape Air could they have worked for Cape Air as a captain. Am. Compl. 75.  These Plaintiffs believed they had no option but to continue working for Cape Air for minimum wage pay or they would be forced to pay a $30,000 penalty.  Am. Compl. 73.  Additionally, even for those Plaintiffs who were able to attain ATP certification and begin work as a captain, their hours were not provided in a timely manner and they were required to work at the minimum-wage rates provided by Cape Air for an extended period of time because they, too, believed they had no option but to continue their employment at Cape Air or they would be forced to pay a $30,000 penalty.  Am. Compl. 54-55, 66-70, 73. Following the end of the Plaintiffs' employment with Cape Air, Cape Air has demanded "repayment" the $30,000 from each of the Plaintiffs since none of them had worked for Cape Air for the required number of months detailed in the employment agreement.  Am. Compl. 74.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 20(a)(1) provides that parties "may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."  "Absolute identity of all events is not necessary" for the conditions for joinder of plaintiffs to be met under Rule 20.  *Advamtel, LLC v. AT&T Corp.*, 105 F. Supp. 2d 507, 514 (E.D. Va. 2000).  Rather, the rule "is to be construed liberally in order to promote trial convenience and to expedite the final

determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977). Because joinder of claims, parties and remedies is strongly encouraged, severance is appropriate only when the prerequisites of permissive joinder have not been satisfied. *Glendora v. Malone*, 918 F. Supp. 224, 227 (S.D.N.Y. 1996).

## IV. ARGUMENT

### A. Plaintiffs Raise Common Questions of *both* Law *and* Fact

One of the two requirements of Rule 20(a)(1) is that the claims of the plaintiffs must share common questions of law or fact. There is no doubt that the Plaintiffs in this case can satisfy that requirement. Indeed, there are clearly common questions of *both* law *and* fact that shared between the claims of all Plaintiffs.

Factually, the Plaintiffs all worked for the same employer, Cape Air, at approximately the same period of time, between 2019 and 2021, under nearly identical employment agreements. Am. Comp. 6-29, 52. All of the Plaintiffs agreed to work for Cape Air for lower hourly rates than they would otherwise have been able to earn in order to gain the ATP certification which would allow them to work as a captain for commercial passenger airlines. Am. Comp. 52-60. Cape Air also imposed nearly identical requirements on the employment of each Plaintiff: that they work as a captain for a period of time that ranged between 12-18 months, and that they sign a promissory note providing that if they resigned before then they would be required to "repay" $30,000. Am. Comp. 56-59.

These nearly identical factual scenarios lead directly to multiple common questions of law raised in the Plaintiffs' Amended Complaint and the Defendant's Motions to Dismiss. For example, in Count 1 of the Complaint each Plaintiff claims that the requirement to pay the

Defendant $30,000 upon the termination of employment is a "kickback" within the meaning of the Fair Labor Standards Act, and that therefore a violation of the FLSA occurred when payment for that amount would cause the Plaintiffs' total pay to fall below the requirements of the FLSA. Conversely, the Defendant has argued, via identical copy-and-paste arguments in each of its 12 Motions to Dismiss, that this payment is not a "kickback" as that term is used in the FLSA. *See* Memo iso MTD Claims Brought by Tennant, 5-7; Memo iso MTD Claims Brought by Shepherd, 5-7; Memo iso MTD Claims Brought by Negrete, 5-7; Memo iso MTD Claims Brought by Morton, 5-7; Memo iso MTD Claims Brought by McClain, 5-7; Memo iso MTD Claims Brought by Bianca, 5-7; Memo iso MTD Claims Brought by Mora, 4-6; Memo iso MTD Claims Brought by Barnes, 4-6; Memo iso MTD Claims Brought by Hanson, 5-7; Memo iso MTD Claims Brought by LeBlanc, 5-7. Similar common questions of law are raised by all Plaintiffs in Count 2 under the Massachusetts Minimum Wage Law, G.L. c. 151, §§1, 20, and again similarly the Defendant argues, via identical copy-and-paste arguments in the same sections of each of 12 Motions to Dismiss, that the $30,000 repayment requirement should be excluded from the state minimum wage analysis. Common questions of law also arise in Counts 3, 4, and 5 of the Complaint, which are also brought by all 12 Plaintiffs against the Defendant, and all of which are based on Cape Air's efforts to use the identical $30,000 repayment obligation it had imposed to unlawfully coerce the Plaintiffs to continue working for it.

    The Defendant makes much of the minor factual differences between the Plaintiffs' respective situations. For example, the Defendant's Motion to Sever notes that the length of time the Plaintiffs agreed to work as a Captain ranged from 12 months to 18 months, that the promissory notes signed by Mr. Hanson and Mr. Mora did not contain a choice of law provisions and the others did, and that Mr. McClain paid the $30,000 that the Defendant demanded of him

while the remaining Plaintiffs did not.  Defendant's Memorandum of Law in Support of Rule 21 Motion to Sever, 4-8.  But Defendant has failed to explain how these relatively minor factual differences have any bearing on the substance of their common legal claims.  Notably, the Defendant's Motions to Dismiss Mr. Hanson's and Mr. Mora's claims do not contest the applicability of Massachusetts laws.  Similarly, Defendant has failed to explain the legal significance of the fact that Mr. McClain repaid the $30,000 that the Defendant's demanded and the other Plaintiffs did not, or the fact that certain employees were required to work for 12 months, some for 15, and some for 18.  More significantly, the Defendant's focus on these minor factual differences overlooks the requirements of Rule 20, under which there need be only common facts or questions of law but "absolute identity of all events is unnecessary."  *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 2012).  Instead, Rule 20 "should be construed in light of its purpose, which is to promote trial convenience and expedite final determination of disputes, thereby preventing multiple lawsuits." *Advamtel, LLC*, 105 F. Supp. 2d at 514.

      While there are some potentially more consequential factual and legal differences between the claims brought by some of the Plaintiffs, even these are not appropriately subject to a motion to sever.  Four of the twelve Plaintiffs were able to complete their ATP certification during their employment with Cape Air while eight of the Plaintiffs were unable to get sufficient hours to complete their ATP certification and therefore were unable to even begin the process of satisfying Cape Air's requirement to work the designated number of months as a captain.  Am. Comp. 73, 75.  Because of this factual distinction, the four Plaintiffs who achieved ATP certification do not join in counts 6 and 7 of the Complaint, claims for breach of contract and breach of the covenant of good faith and fair dealing arising from Cape Air's failure to provide sufficient hours to allow its employees to satisfy the contractual requirement Cape Air itself

imposed on them.[2] However, joinder under Rule 20(a)(1) does not require complete identity of facts and legal claims. All that is required is that the Plaintiffs' claims share at least one common question of law or fact. *Carye v. Long Beach Mortg. Co.*, 470 F. Supp. 2d 3, 8 (D. Mass. 2007). As the repetitive arguments in the Defendant's Motions to Dismiss indicate, the Plaintiffs claims in this case clearly share both.

### B. Plaintiff's Claims Arise from the Same Series of Transactions or Occurrences

Rule 20(a) also requires that joined Plaintiff's claims arise out of the same transaction, occurrence, or series of transactions or occurrences. Fed. R. Civ. P. 20(a)(1)(A). In the context of Rule 20, "'[t]ransaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much on the immediateness of their connection as upon their logical relationship." *Montgomery v. STG It'l, Inc*., 532 F. Supp. 2d 29, 35 (D.D.C. 2008). When evaluating this prong of Rule 20(a), it should be viewed as a "flexible test where the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties." *John S. Clark Co. v. Travelers Indem. Co.*, 359 F. Supp. 2d 429, 437-38 (M.D.N.C. 2004).

A series of separate contracts still satisfies the "series of transactions or occurrences" requirement where they are sufficiently similar and the legal claims arising from them are logically related. *See, e.g.*, *Hinson v. Norwest Financial South Carolina, Inc*., 239 F.3d 611, 618 (4th Cir. 2001) (permitting joinder of multiple plaintiff borrowers with similar loans from same lender alleging similar violations of Truth in Lending Act); *De David v. Alaron Trading Corp*.,

---

[2] At a future date in the course of this litigation is may become evident that the goals of judicial economy and fairness would be best served by separating the Plaintiffs into two groups, for example, into those who were able to achieve ATP certification and those who were not. But at this early date in the discovery process, where the documents and records required are held by the single Defendant, and where discovery would progress more efficiently with the parties joined, the goal of judicial economy clearly favors allowing the parties to remain joined.

814 F. Supp. 2d 822, 831 (N.D. Ill. 2011) (permitting permissive joinder for plaintiff account holders who alleged defendants defrauded each in same or similar ways under single Ponzi scheme); *Carye*, 470 F. Supp. 2d at 8 (plaintiffs signed separate but similar loans with identical riders properly joined in action against single mortgage company).

In the employment context, courts have held that the claims of multiple plaintiff employees against a single employer satisfy the "logical relationship" standard, and therefore arise out of the same series of transactions or occurrences, when there are sufficient factual similarities and the claims arise as a result of an employer's policy or practice. *See, e.g.*, *Binns v. United Maintenance Co., Inc.*, 2021 WL 168962, at * (N.D. Ill. 2021) (proper joinder of plaintiff employees alleging workplace discrimination from employer's broad policy); *Dixon v. Scott Fetzer Co.*, 317 F.R.D. 329, 332 (D. Conn. 2016) (plaintiff employees properly joined where FLSA claims were logically related because with common questions of employee training and independent contractor classification); *M.K. v. Tenet*, 216 F.R.D. 133, 142 (D.D.C. 2002) (plaintiff employees properly joined where employer's "policy and practice" of obstruction of counsel resulted in logical relationship between plaintiffs' request for injunctive relief); *Puricelli v. CNA Insurance Co.*, 185 F.R.D. 139, 143 (N.D.N.Y. 1999) (joinder of plaintiff employees' age discrimination claims alleging pattern of employer conduct discriminating based on age with common basis for adverse employment decisions).

A simple review the facts of this case makes clear a logical relationship between the Plaintiffs' claims.  The employment agreements and promissory notes at issue for each Plaintiff are nearly identical, differing only in the name of the employee, the date of hire, and the variation of the length of the work requirement between 12 and 18 months.  Even though there are analytically inconsequential differences between the dates and time frames of each

9

employee's contract with the Defendant, the Plaintiffs allege that their harms arise from the Defendant's consistent policy which was maintained over a period of time – the policy of hiring employees at near the minimum legal rate of pay, with a requirement to work at defined number of months at a particular position, and to require the repayment of $30,000 if that requirement was not met.

*Abdullah*, relied upon by the Defendant, does not require a different result. That case involves the claims of 1,000 plaintiffs brought against 93 defendants for alleged asbestos exposure. *Abdulla v. Acands, Inc.*, 30 F.3d 264, (1st Cir. 1994). The appellate court noted in dicta that it agreed with the trial court's conclusion that joinder of the 1,000 plaintiffs and 93 defendants had been improper, before going on to affirm the dismissal of the plaintiffs' claims for failure to comply with the court's local rules and MML orders applicable to asbestos cases. *Id*. at 268, 270. In elaborating on the joinder issue in a footnote, the court noted that the single complaint failed to indicate how the asbestos exposure might have occurred for the plaintiffs, whether it occurred during the same time period, on the same vessels, or what common products or equipment may have been responsible for the exposure. *Id*. at 268 n.5. The sprawling and non-specific complaint at issue in *Abdullah* is far from the narrowly defined allegations in the instant Complaint, where the twelve Plaintiffs have specified the relevant common contractual provisions and promissory notes at issue with respect to each Plaintiff, and the logical relationship between their respective legal claims against the single defendant.

*Papagiannis* is similarly unavailing for the Defendant. In that case the court considered the joinder of two plaintiffs who alleged that they were fraudulently induced to invest in separate oil wells, on separate occasions, by the same allegedly fraudulent practices of the defendant. Central to the court's decision that joinder was inappropriate in *Papagiannis* was the distinct and

10

individualized proof that the plaintiffs, alleged victims of face-to-face fraud, would be required to provide. *See Papagiannis v. Pontikis*, 108 F.R.D. 177, 179 (N.D. Ill. 1985). No such issue arises in the instant case, where the striking similarities of the employment agreements and promissory notes central to the claims of all Plaintiffs suggest a scenario that has far more in common with the plaintiffs in *Carye*, who were appropriately joined as recipients of similar but contractually separate loans, than with the plaintiffs in *Papagiannis*.

### V.  CONCLUSION

For the reasons described above, Plaintiffs request that the Court deny Defendant's Motion to Sever.

Respectfully submitted,
CHRISTOPHER CONNOR MCCLAIN, DENNIS ABRAMOV, MILES COLLINS, RICKY LEBLANC, SAMUEL SHEPHERD, OHIANA NEGRETE, JOSE MORA, NATHAN BARNES, DANIEL BIANCA, JEFFREY BUTLER HANSON, JR., STEVEN MORTON, and WILLIAM TENNANT

By their attorney,
*/s/Elijah Bresley*
Elijah Bresley, Esq. (BBO#691092)
ebresley@slnlaw.com
Emily Smith-Lee, Esq. (BBO#634223)
esmithlee@slnlaw.com
46 South Main St.
Sharon, MA 02067
(781) 784-2322

January 5, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of January 2023, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, is available for viewing and downloading from the ECF system, will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing and via first class mail to all non-registered participants identified on the Notice of Electronic Filing.

>                     */s/ Elijah Bresley*
>                     Elijah Bresley