UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER CONNOR MCCLAIN et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CAPE AIR, )<br>)<br>Defendant. )<br>) | Case No. 22-cv-10649-DJC |

MEMORANDUM AND ORDER

**CASPER, J.**                                                                                          **December 12, 2023**

## I.   Introduction

Plaintiffs Christopher Connor McClain ("McClain"), Dennis Abramov ("Abramov"), Miles Collins ("Collins"), Jeffrey Butler Hanson, Jr. ("Hanson"), Ricky LeBlanc ("LeBlanc"), Samuel Shepherd ("Shepherd"), William Tennant ("Tennant"), Ohiana Negrete ("Negrete"), Jose Mora ("Mora"), Nathan Barnes ("Barnes"), Steven Morton ("Morton"), Daniel Bianca ("Bianca"), Ashley Malone ("Malone"), Ryan Wood ("Wood") and Shelby Schulz ("Schulz") (collectively, "Plaintiffs" or "Counter-Defendants") have sued Defendant Cape Air for violation of state and federal laws in connection with their employment by Cape Air.  D. 69.  In a previous Memorandum and Order, the Court allowed Cape Air's motions to dismiss in part and denied them in part, D. 64, and Cape Air subsequently filed answers to the amended complaint with counterclaims as to all Plaintiffs, except McClain.  D. 73–87.  Plaintiffs have now moved to dismiss Cape Air's counterclaims.  D. 95.  For the reasons stated below, the Court DENIES Plaintiffs' motion to dismiss.

1

**II.   Standard of Review**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Germanowski v. Harris, 854 F.3d 68, 71 (1st Cir. 2017). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678).

**III.   Factual Background**

Except where otherwise noted, the following facts are drawn from Cape Air's answer to Plaintiffs' allegations and Cape Air's counterclaim allegations, D. 73–87, and are accepted as true for the purpose of resolving Plaintiffs' motion to dismiss.[1]

Plaintiffs were pilots seeking Airline Transport Pilot ("ATP") certification, a requirement imposed by the Federal Aviation Authority (FAA) on commercial flight pilots. See D. 73 at 4 ¶ 38, at 5 ¶ 48, at 13 ¶¶ 7–9. To obtain ATP certification, a pilot must pass a written and practical test. D. 73 at 13 ¶ 10. Generally, a pilot must achieve 1,500 hours of flight time and obtain a

---

[1] Although Cape Air filed separate answers and counterclaims as to each Plaintiff, it asserts the same or substantially the same claim as to all Plaintiffs. D. 73–86. Accordingly, the Court cites to only one of Cape Air's answers when discussing its allegations.

lower-level FAA certificate to be eligible to take the ATP tests. Id. at 4 ¶ 40, at 13 ¶ 11. Cape Air operates an FAA-certified training program, which includes an ATP upgrade training wherein Cape Air may administer "Captain 135 proficiency check[s]" under federal aviation regulations and issue ATP certificates to trainees who complete that check. Id. at 14 ¶¶ 13–14. Cape Air pays for various costs associated with this course, including third-party instructors, the maintenance of flight simulators and trainees' housing and *per diem* expenses. Id. at 15–16 ¶ 24. In addition, Cape Air arranges and pays for eligible pilots to attend other courses and exams required for ATP certification, which Cape Air is not authorized to administer. Id. at 14 ¶ 15. Cape Air alleges that it incurs actual costs exceeding $30,000 when it trains a pilot for ATP certification. Id. at 16 ¶ 25.

Between 2019 and 2021, Plaintiffs each signed and accepted employment offer letters with Cape Air. Id. at 1–3 ¶¶ 6–35. All of the Plaintiffs had some flight experience prior to being hired by Cape Air, but lacked the 1,500 hours required to become eligible for the ATP practical test, except for Abramov who had 1,500 flight hours when he was hired. Id. at 5 ¶ 48, at 6 ¶ 65. Cape Air "commit[ted]" in the offer letters to providing each Plaintiff "the necessary experience to successfully obtain [the Plaintiff's] ATP certificate and qualify [the Plaintiff] as a Captain for Cape Air." Id. at 17 ¶ 33; D. 73-1. Plaintiffs could not become Cape Air Captains until after they achieved ATP certification. D. 73 at 15 ¶ 22. While training for their ATP certification, these Plaintiffs agreed to work as "First Officers," alternatively referred to as "Second-In-Command" or "SIC." Id. at 4 ¶ 43, at 14 ¶ 16. Upon attaining 1,200 flight hours and completing a practical check, Plaintiffs could be upgraded to "Pilot-In-Command." Id. at 15 ¶ 19.[2]

---

[2] As noted in the Court's prior Memorandum and Order, Abramov's offer letter and promissory notes differed from that of his co-Plaintiffs. Abramov's March 31, 2020 employment offer letter stated that he would receive "pilot training" at a "substantial" investment and acknowledged Cape

3

Plaintiffs' employment offer letters required each Plaintiff to work for Cape Air as a Captain for a minimum period after obtaining ATP Certification, ranging between twelve to eighteen months. See, e.g., D. 73-1 (requiring employment as Captain for twelve months); D. 74-1 (requiring employment as Captain for eighteen months). These offer letters required any Plaintiff who resigned or was terminated for cause before completing the minimum period as Captain to "repay the reasonable costs and training investment in your training," which was "acknowledged to be thirty thousand dollars ($30,000)." D. 73 at 17 ¶ 33. The Plaintiffs also each signed a promissory note within a few days of accepting their employment offers promising to repay the $30,000 sum, characterized as a "Training Investment," to Cape Air if they failed to work as Captains for the minimum period. See, e.g., D. 73-2; D. 73 at 18 ¶¶ 37–40.

Abramov, Barnes, Mora and Hanson completed ATP certification during their Cape Air employment and began working as Captains (collectively, the "Captain Plaintiffs"). Id. at 7–8 ¶¶ 84–87, 89. The remaining Plaintiffs McClain, Collins, Leblanc, Shepherd, Negrete, Bianca, Morton, Tennant, Malone, Wood and Schulz did not obtain ATP certification and did not begin to work as Captains (collectively, the "First Officer Plaintiffs"). Id. at 7 ¶ 82. Neither the Captain nor the First Officer Plaintiffs served as Captains for the minimum required period prior to resigning from Cape Air. See, e.g., id. at 19 ¶ 47; D. 75 at 19 ¶ 43; D. 86 at 18 ¶ 41. Cape Air has demanded that all Plaintiffs pay the $30,000 training investment, but none have complied except for McClain. D. 73 at 8 ¶ 97, 19 ¶ 49.

---

Air's "expectation that upon successful completion of [his] training, [Abramov] will serve as a pilot for a minimum of 12 months." D. 86-1. It did not contain any provision requiring repayment of $30,000. Id. He also signed his promissory note for $30,000, months after executing his offer letter. D. 86-2. Neither party, however, appears to suggest that Cape Air's counterclaims against Abramov should be analyzed differently for the purposes of the present motion.

IV.     **Procedural History**

McClain filed this action on April 29, 2022, D. 1, and subsequently amended his complaint. D. 5. After the Court allowed in part and denied in part Cape Air's motions to dismiss, D. 64, and allowed a further amendment of complaint to add co-Plaintiffs, D. 68, 69, Cape Air filed answers to Plaintiffs' second amended complaint and alleged counterclaims against Plaintiffs. D. 73–87. Plaintiffs have moved to dismiss the counterclaims. D. 95.

V.      **Discussion**

    A.      **Breaches of Contract (Counts I and II)**

To succeed on a breach of contract claim, Cape Air "must show (1) the existence of a valid contract; (2) that it has performed its obligations under the contract; and (3) a breach of the contract that causes damages." Lombard Med. Techs., Inc. v. Johannessen, 729 F. Supp. 2d 432, 438 (D. Mass. 2010) (citing Persson v. Scotia Prince Cruises, Ltd., 330 F.3d 28, 34 (1st Cir. 2003)). Here, Cape Air alleges in its counterclaims that Plaintiffs breached the terms of their employment offer letters and promissory notes by resigning prior to serving the minimum required period as Cape Air Captains and then refusing to pay back the agreed-upon $30,000 to allow Cape Air to recoup the cost of training. D. 73 at 20 ¶¶ 51–54. In their motion to dismiss, Plaintiffs challenge only the first element of the claim, arguing that the employment offer letters and promissory notes are unenforceable under several theories. D. 96 at 4–8.

        1.      *Liquidated Damages Clause*

First, Plaintiffs argue that the provisions of the employment offer letters and promissory notes that require repayment of $30,000 in training costs constitute an unenforceable penalty clause violating Massachusetts public policy. D. 96 at 4–5. As Plaintiffs acknowledge, "[t]here is no bright line separating an agreement to pay a reasonable measure of damages from an unenforceable penalty clause." Id. at 4 (quoting TAL Fin. Corp v. CSC Consulting, Inc., 446

Mass. 422, 431 (2006)). In its prior Memorandum and Order, this Court explained that liquidated damages clauses "will be enforced where (1) 'at the time of contracting the actual damages flowing from a breach were difficult to ascertain,' and (2) 'the sum agreed on as liquidated damages represents a 'reasonable forecast of damages expected to occur in the event of a breach.'" D. 64 at 15–16 (quoting NPS, LLC v. Minihane, 451 Mass. 417, 420 (2008)). Further, the party challenging the provision bears the burden of showing that the liquidated damages sought are "grossly disproportionate to a reasonable estimate of anticipated damages" at the time of contract formation. Id. at 16 (quoting TAL Fin. Corp., 446 Mass. at 432 (quotation marks omitted)).

Although the Court previously concluded that the amended complaint plausibly pled that this clause was unenforceable, that conclusion assumed the truth of the amended complaint's allegations and drew all reasonable inferences in Plaintiffs' favor. D. 64 at 16. On the present motion to dismiss the counterclaims, this Court must take Cape Air's counterclaim allegations as true and draw reasonable inferences in Cape Air's favor. While some of Cape Air's training costs may have been easy to ascertain, (e.g., fees for the Captain Plaintiffs to take ATP courses administered by third-parties, D. 73 at 14 ¶ 15), Cape Air has plausibly alleged other costs which may have been difficult to calculate for any individual Plaintiff. This includes the cost of hiring instructors, the use and maintenance of flight simulators and *per diems* and housing for Plaintiffs during training. Id. at 15–16 ¶ 24. Cape Air has also alleged that the cost of training a pilot for ATP certification exceeds $30,000, id. at 16 ¶¶ 25–26, contrary to Plaintiffs' allegation that the cost is less than $10,000, D. 69 ¶ 88. Accordingly, Cape Air has plausibly alleged that $30,000 is a reasonable estimate of training costs that were difficult to otherwise ascertain in case of breach. See Bose Corp. v. Ejaz, 732 F.3d 17, 25–26 (1st Cir. 2013) (concluding that liquidated damages of $50,000 per unauthorized sale for a product that retailed at $6,500 was reasonable on summary

judgment, where plaintiff "articulated a series of harms" including damage to its brand name, enforcement costs, and likelihood that plaintiff would not be able to prove all of defendant's sales had occurred).

Hyannis Air Service, Inc. v. Morse, No. 2245-cv-0036 (Northampton Dist. Ct. Jan. 13, 2023), cited by Plaintiffs, does not warrant a different outcome. D. 96 at 5 (citing D. 96-2). Morse involved another former Cape Air employee who had signed a similar offer letter and promissory note. D 96-1; D. 96-2 at 1. In Morse, the court dismissed Cape Air's claims against that employee because "the liquidated damages are not a reasonable forecast of the damages expected to occur in the event of a breach." D. 96-2 at 5. As made clear in the Morse court's later order on Cape Air's motion for reconsideration, the Morse court's decision was based on a more limited set of factual allegations than the allegations before this Court on the present motion. D. 61-1 at 2 (Hyannis Air Serv., Inc. v. Morse, No. 2245-cv-0036 (Northampton Dist. Ct. Mar. 24, 2023)) (stating that "[i]n seeking reconsideration, [Cape Air] includes allegations of fact that it failed to put before the Court at the hearing on the motion to dismiss"). The Court acknowledges that some facts may favor Plaintiffs' position, including that the $30,000 repayment requirement applied uniformly to all Plaintiffs, regardless of their prior flying experience, the amount of time they spent in training or the amount of time they were employed as Cape Air Captains. See D. 96 at 5. At this early stage of litigation, however, Plaintiffs cannot meet their burden to show that $30,000 is grossly disproportionate to Cape Air's actual costs and the Court will not preclude either party from developing a factual record that supports their position on the enforceability of the repayment provision. See Bose Corp., 732 F.3d at 26 (affirming district court's conclusion that liquidated damages clause was enforceable based upon evidence at summary judgment stage); Park v. FDM Grp. (Holdings) PLC, No. 16-cv-1520-LTS, 2017 WL 946298, at *4 (S.D.N.Y. Mar. 9, 2017)

7

(concluding that $30,000 fee "correspond[ed] to maximum value of the training" which plaintiff received while working as consultant for defendant and recognizing that "[s]uch liquidated damages provisions are not unusual"), vacated in part on other grounds, 2018 WL 4100524 (S.D.N.Y. Aug. 28, 2018).

    2.    *Essential Terms*

Citing primarily to Morse, Plaintiffs also argue that the training cost repayment provision is unenforceable, because Plaintiffs' agreements with Cape Air lack essential terms. D. 96 at 7–8. Morse concluded that the relevant contract lacked "a time frame in which [Cape Air] is bound to qualify" each Plaintiff as a Cape Air Captain while obligating Plaintiffs to remain employed by Cape Air. D. 96-2 at 2. Again, it appears that Morse was decided on a less complete set of factual allegations than presented by the litigants in the present case. As alleged by Cape Air, its obligations to train Plaintiffs were laid out in its pilots' collective bargaining agreement (which was incorporated by reference in the employment offer letter) and set forth in a General Flight Training Manual. D. 73 at 14 ¶¶ 13–15; D. 99-1. The ATP training program was also FAA-certified. D. 73 at 14 ¶ 14. As explained in this Court's prior Memorandum and Order, to the extent that Cape Air had unilateral discretion over how Plaintiffs progressed through each stage of training and whether to qualify a Plaintiff as a Captain, such discretion was subject to the implied covenant of good faith and fair dealing. D. 64 at 27–28 (quoting Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 473 (1991)). The Court has permitted Plaintiffs' claim for breach of that implied covenant to proceed, implicitly recognizing that an enforceable contract may well exist between Plaintiffs and Cape Air. Id. at 29.

Moreover, this Court previously rejected Plaintiffs' argument that no valid contract exists because the agreements between Plaintiffs and Cape Air did not set a definite time for Cape Air's performance. Id. at 21–23. "Ambiguous or indeterminate material terms can render an attempted

8

agreement too uncertain for enforcement[,]" but "the law does not demand impracticable precision from contracting parties." Targus Grp. Int'l, Inc. v. Sherman, 76 Mass. App. Ct. 421, 431 (2010). Where a contract lacks a definite time for performance, "a court may furnish a time element reasonable in the circumstances of the parties' dealings." Id.; see Charles River Park, Inc. v. Bos. Redevelopment Auth., 28 Mass. App. Ct. 795, 814 (1990) (explaining that reasonable time can be determined from "the nature of the contract, the probable intention of the parties as indicated by it, and the attendant circumstances"). On a more complete factual record, the Court may be able to determine whether Cape Air's timeline for performance was reasonable. See Barber v. Fox, 36 Mass. App. Ct. 525, 531 (1994) (implying obligation to perform within a reasonable time and rejecting argument that contract was unenforceable and indefinite); Marks v. Southcoast Hosps. Grp., Inc., No. PLCV0201284, 2011 WL 13324016, at *18 (Mass. Super. Dec. 30, 2011) (determining appropriate due date for repayment of debt), aff'd, 84 Mass. App. Ct. 1114 (2013). Accordingly, the Court will not grant Plaintiffs' motion to dismiss the breach of contract claim for the absence of essential terms.

### 3. *Massachusetts Labor Trafficking Law*

Plaintiffs also argue that the offer letters and promissory notes are unenforceable, because they violate Mass. Gen. L. c. 265 § 51(a) which makes it a crime to "subject[], or attempt[] to subject, another person to forced services." D. 96 at 6; see Commonwealth v. Martins Maint., Inc., 101 Mass. App. Ct. 186, 192 (2022) (referring to § 51(a) as the "labor trafficking" statute). The only case Plaintiffs cite in support of invalidating an employment contract based on § 51 is Morse, which did not offer any analysis aside from citing to this criminal statute in concluding that the contract at issue "may" violate § 51(a) based on an incomplete set of factual allegations. D. 96-2 at 3 & n. 2.

9

The term "forced services" in § 51A is defined, in relevant part, as services "performed or provided by a person that are obtained or maintained by another person who: (i) causes or threatens to cause serious harm to any person; (ii) physically restrains or threatens to physically restrain another person; (iii) abuses or threatens to abuse the law or legal process . . . or (vi) causes or threatens to cause financial harm to any person." Mass. Gen. L. c. 265, § 49. This echoes the language of the federal Trafficking Victims Protection Act ("TVPA"), which the Court discussed in its prior Memorandum and Order. 18 U.S.C. § 1589(a) (prohibiting obtaining services of a person "(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint"); see D. 64 at 14–18. Given the dearth of case law analyzing conduct prohibited by § 51(a), see Martins Maint., 101 Mass. App. Ct. at 192 (analyzing knowledge element § 51(a) and corporate liability), as well as the similarities between the language of the TVPA and § 51, this Court turns to the TVPA for guidance. See Commonwealth v. McGhee, 472 Mass. 405, 419 n.12 (2015) (comparing definitions of "commercial sex act" in TVPA with definition of "[c]ommercial sexual activity" in Massachusetts trafficking statute, Mass. Gen. L. c. 265 § 49).

In its prior analysis, this Court concluded that if the training repayment provision was an unenforceable penalty, an employer's threat to enforce it against departing employees could be a threatened abuse of a legal process in violation of the TVPA. D. 64 at 15. Under § 51(a), enforcement of the training repayment provision could also be viewed as conduct "that abuses or

threatens to abuse the law or legal process" or threats "to cause financial harm." Mass. Gen. L. c. 265, § 49. At this stage, the Court is not persuaded, taking Cape Air's allegations as true and making all reasonable inferences in Cape Air's favor, that the training repayment provisions violate § 51(a) and are thus unenforceable on possible public policy grounds. Ultimately, in assessing whether an employment contract constitutes violation of public policy, this Court must "draw a line between improper threats or coercion and permissible warnings of adverse but legitimate consequences." United States v. Bradley, 390 F.3d 145, 151 (1st Cir. 2004) (interpreting "threat of serious harm" under TVPA and explaining that "[t]aken literally" TVPA could be construed to cover an employer's "legitimate stance" such as a "'threat' not to pay for passage home if an employee left early"), cert. granted, judgment vacated on other grounds, 545 U.S. 1101 (2005); see Commonwealth v. Gernrich, 476 Mass. 249, 257 (2017) (explaining that "rule of lenity supports the narrow interpretation" of a criminal statute). The repayment of Cape Air's reasonable training costs may well be a legitimate consequence for Plaintiffs' early resignations. See Carter v. Paschall Truck Lines, Inc., No. 5:18-CV-41-BJB, 2023 WL 359559, at *10 (W.D. Ky. Jan. 23, 2023) (concluding that federal trafficking claim could not survive summary judgment where early-termination fee was enforceable under state law, truck driver faced only economic pressure and reasonable person in same position would not have been coerced).

Accordingly, the Court denies the motion to dismiss the breach of contract.

**B.     Promissory Estoppel (Count III), Unjust Enrichment (Count IV) and Quantum Meruit (Counts V)**

Plaintiffs also raise various overlapping arguments for why Cape Air's alternative theories of recovery are inadequately stated. D. 96 at 8–12. The Court notes that although Cape Air pleads unjust enrichment and *quantum meruit* as separate counterclaims, the parties agree that *quantum meruit* is a measure of damages available for unjust enrichment. Id. at 11; D. 99 at 19.

11

### 1. *Public Policy*

Plaintiffs first argue that because the employment offer letters and promissory notes violate public policy and are unenforceable, Cape Air should not be permitted to "skirt public policy and enforce their contract through other claims." D. 96 at 8. In light of this Court's conclusion that enforcement of the offer letters and promissory notes do not violate public policy, at least under a Rule 12(b)(6) standard, there is no reason to bar Cape Air's alternative theories. Accordingly, the Court denies the motion to dismiss the remaining counts as contrary to public policy.

### 2. *Special Contract Under the Massachusetts Wage Act*

Plaintiffs next argue that the training repayment provision is prohibited by the Massachusetts Wage Act, Mass. Gen. L. c. 149 § 148. D. 96 at 8–9. "Section 148 of the Wage Act requires prompt and full payment of wages due." Camara v. Att'y Gen., 458 Mass. 756, 759 (2011). It further "prohibits an employer from exempting itself from the timely and complete payment of wages by 'special contract . . . or by any other means.'" Fraelick v. PerkettPR, Inc., 83 Mass. App. Ct. 698, 707 (2013) (quoting Mass. Gen. L. c. 149 § 148). Such special contract typically involves "deducting, or withholding payment of, *any* earned wages." Camara, 458 Mass. at 760 (emphasis in original). Here, nothing in Cape Air's counterclaim allegations or in Plaintiffs' second amended complaint suggests that Plaintiffs received incomplete or untimely wages. See D. 73 at 16 ¶ 28. Plaintiffs have not cited any cases concluding that a Wage Act violation exists where employees are paid in full and on time, but the employer sues to recover some other amount contractually owed after the employment prematurely ends. Cf. Camara, 458 Mass. at 757, 760–61 (concluding that employer could not deduct from truck driver wages damages from accidents where employer unilaterally determined truck drivers to be at fault); Awuah v. Coverall N. Am., Inc., 460 Mass. 484, 491–93 (2011) (explaining that employer could not treat employee's earned wages advances on customer payments and deduct "chargebacks" when customers paid late).

Even assuming that the training repayment provision could be treated as analogous to a deduction or withholding from Plaintiffs' paycheck, Cape Air has at least plausibly alleged that the $30,000 falls within the Wage Act's exception for a "valid set-off" for a "clear and established debt." See Camara, 458 Mass. at 763 n.13 (recognizing Mass. Gen. L. c. 265 § 150 provides defense to § 148 violation where there is "proof of an undisputed loan or wage advance from the employer to the employee"). As alleged by Cape Air, Plaintiffs agreed to "repay the reasonable costs and training investment in [their] training" if they resigned prior to serving a minimum period as Cape Air Captains. D. 73 at 17 ¶ 33; see Somers v. Converged Access, Inc., 454 Mass. 582, 593 n.13 (2009) (noting that "a preexisting written policy or agreement signed by the employee" may assist "employers intending to rely on a 'valid set-off' defense to an action for nonpayment of wages, pursuant to G.L. c. 149, § 150"). Other courts have treated similar arrangements requiring employees to repay the costs of their training to obtain portable certifications as valid loans, in the context of the federal minimum wage law. See, e.g., Gordon v. City of Oakland, 627 F.3d 1092, 1096 (9th Cir. 2010) (concluding that "the City elected to essentially loan police officer trainees like [plaintiff] the cost of their police academy training" and offered to forgive repayment if the trainee served as a police officer for five years); Heder v. City of Two Rivers (Heder II), 295 F.3d 777, 779 (7th Cir. 2002) (explaining that "[t]he employer could require the worker to pay for his own training but lend the worker the money and forgive repayment if he sticks around"). In the absence of a developed factual record, it would be premature to conclude that allowing Cape Air to recover under a theory of promissory estoppel or unjust enrichment would violate the Wage Act. See D. 64 at 13–14 (describing factual allegations favoring Plaintiffs' characterization of the $30,000 training investment as an unlawful kickback and noting that "the issue is best resolved with the benefit of discovery"); Jones Lang Lasalle Ams., Inc. v. Powers, No. 20-CV-05936, 2023

WL 2745120, at *15 (N.D. Ill. Mar. 31, 2023) (applying Massachusetts and concluding genuine disputes of fact precluded court from "determin[ing] as a matter of law that the [promissory] Note was an 'undisputed loan' or that [employee] owed [employer] 'a clear and established debt' thereunder"); Randolph v. Madison Square Realty Mgmt., Inc., 2008 Mass. App. Div. 186, 2008 WL 4200584 at *3–4 (Dist. Ct. 2008) (affirming judgment for employer on Wage Act claim where jury found that employee failed to repay loan from employer and accordingly offset employee's final weekly wages by amount due). Accordingly the Court will not deny the promissory estoppel and unjust enrichment claims on this basis.

### 3. Reasonable Reliance for Promissory Estoppel

To state a claim for promissory estoppel, Cape Air must allege "(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." Sullivan v. Chief Just. for Admin. & Mgmt. of Trial Ct., 448 Mass. 15, 27–28 (2006). In their motion to dismiss, Plaintiffs do not dispute that they represented to Cape Air that they would remain employed for a minimum period after achieving ATP certification, but instead argue that Cape Air's promissory estoppel claim should be dismissed because no reasonable reliance has been alleged and no detriment resulted. D. 96 at 9–11.

First, Plaintiffs argue that Cape Air's reliance on a minimum period of service to Cape Air as Captains was unreasonable because Cape Air could not "in its own power" provide ATP certification. Plaintiffs cite no case law in support of this argument. Some Massachusetts cases have concluded that a party cannot reasonably rely on a promised benefit if that benefit is contingent on a third party's approval. See Anzalone v. Admin. Off. of Trial Ct., 457 Mass. 647, 661–62 (2010) (concluding that commissioner's appointment of plaintiff as probation officer did not cause reasonable reliance where plaintiff was informed that position was contingent on

14

approval of separate body and plaintiff provided incomplete disclosures). The Court is not convinced, however, that Cape Air could not, as a matter of law, reasonably rely on Plaintiffs' commitment to a future period of employment after achieving ATP certification, where both parties understood that the promise would not be fulfilled until after certification and where Cape Air was, as alleged, investing significant resources into ensuring that certification occurred. See Bryan Corp. v. ChemWerth, Inc., 952 F. Supp. 2d 358, 369 (D. Mass. 2013) (concluding that party had plausibly alleged reasonable reliance where "representation that there would be a present commitment to make sufficient purchases in the future to justify [plaintiff] investing in the validation process" was "not inconsistent with an understanding that purchases would not be consummated until after FDA approval").

Second, Plaintiffs argue that the offer letters and promissory notes contemplated circumstances under which they might not complete the minimum period of service, such as due to "unforeseen serious illness or the unforeseen serious illness or death of an immediate family member." D. 73 at 17 ¶ 33; D. 96 at 10–11. The allegations here do not suggest that the parties contemplated the chance of death or illness as anything other than a remote possibility, such that Cape Air could not reasonably rely on Plaintiffs to keep their promise. Compare Goldthwaite v. Sensear, Inc., No. 15-CV-13143-MLW, 2016 WL 5329635, at *4 (D. Mass. Aug. 25, 2016) (concluding that plaintiff's reliance on statements regarding defendant's financial condition was reasonable where plaintiff "was not aware of or even suspicious about" unethical or illegal behavior that inflated sales practices), report and recommendation adopted, 2016 WL 5338498 (D. Mass. Sept. 21, 2016), with Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 475 (2009) (concluding that reliance was unreasonable where evidence at summary judgment showed that credit unions were aware of non-compliance with data storage requirements, insured

15

themselves against such losses and understood that "system is designed with the expectation that breaches [of the data storage requirements] will occur").

Certainly, where a valid contractual provision governs, Cape Air may not recover on promissory estoppel theory. See Carvalho v. JPMorgan Chase Bank, N.A., No. 17-cv-10723-PBS, 2019 WL 1921701, at *3 (D. Mass. Apr. 30, 2019) (citing Malden Police Patrolman's Ass'n v. Malden, 92 Mass. App. Ct. 53, 61 (2017)). At this early stage of litigation, and especially in light of the parties' dispute over whether the repayment provision is enforceable, however, Cape Air is permitted to plead promissory estoppel as an alternative claim, even if the contract contemplates another form of relief. See Bosque v. Wells Fargo Bank, N.A., 762 F. Supp. 2d 342, 353 (D. Mass. 2011) (denying motion to dismiss promissory estoppel claim where pled as an alternative theory of recovery).

Finally, Plaintiff asserts that "Cape Air failed to state any actions that it took because of Plaintiffs' promise." D. 96 at 10. Plaintiffs characterize Cape Air's allegations regarding its "**future** flight schedules, routes, and other matters impacted by the number of Captains flying aircraft for Cape Air" as "plans for the future with some vague understanding that Plaintiffs were a part of those plans," rather than acts or omissions which Cape Air actually took in reliance. D. 96 at 10 (quoting D. 73 at 22 ¶ 66 (alteration in original)). Plaintiffs' characterization ignores Cape Air's numerous counterclaim allegations regarding the resources it expended to train Plaintiffs, including hiring instructors, providing housing and *per diem* while Plaintiffs were at Cape Air's training facilities and paying for the Captain Plaintiffs to take courses and exams administered by the FAA or other third parties. D. 73 at 14 ¶ 15, at 15–16 ¶ 24, at 23 ¶ 71. As alleged, these expenditures exceeded $30,000 per pilot trained. Id. at 16 ¶ 25. These allegations

are sufficient to establish that Cape Air acted in detrimental reliance on Plaintiffs' promises to serve as Cape Air Captains.

Accordingly, the Court denies the motion to dismiss the promissory estoppel counterclaims for lack of reasonable and detrimental reliance.

### 4. Inequitable Circumstances for Quantum Meruit and Unjust Enrichment

As noted in this Court's prior decision, to recover for unjust enrichment, Cape Air "must show that [Plaintiffs] received, w[ere] aware of, and accepted or retained a benefit conferred by [Cape Air] 'under circumstances which make such acceptance or retention inequitable.'" Lass v. Bank of Am., N.A., 695 F.3d 129, 140 (1st Cir. 2012) (quoting Vieira v. First Am. Title Ins. Co., 668 F. Supp. 2d 282, 294 (D. Mass. 2009)); D. 64 at 26. "The injustice of the enrichment or detriment equates with the defeat of a person's reasonable expectations." Liss v. Studeny, 450 Mass. 473, 480 (2008).

Plaintiffs argue that the First Officer Plaintiffs did not receive the benefit promised by Cape Air in the employment offer letters, namely ATP certification, and thus did not keep any benefit under inequitable circumstances. D. 96 at 11–12. As an initial matter, Plaintiffs' view of the promised benefit is undermined by its own assertion that Cape Air could not by "its own power" confer ATP certification on Plaintiffs, id. at 10, and by the language of the offer letters themselves, which refer to "the necessary experience to successfully obtain your ATP certificate," D. 73 at 17 ¶ 33. Here, Cape Air has adequately pled that the First Officer Plaintiffs knowingly accepted flight hours, instruction, housing and other benefits while in training. D. 73 at 14 ¶ 15, at 15–16 ¶ 24, at 23 ¶ 71. Further Cape Air plausibly allege that Plaintiffs understood that Cape Air provided these benefits with the expectation that Plaintiffs would achieve ATP certification and then work as Cape Air Captains for some period. That expectation was defeated and injustice ensued when Plaintiffs then resigned prior to serving the expected period as Captains. See Finard & Co., LLC

17

v. Sitt Asset Mgmt., 79 Mass. App. Ct. 226, 230 (2011). Drawing all plausible inferences in favor of Cape Air as to its counterclaims, Cape Air's expectation of Plaintiffs' service was reasonable and it would be unjust to allow Plaintiffs to retain benefits procured by Cape Air at significant expense. Accordingly, the Court denies the motion to dismiss the unjust enrichment and *quantum meruit* counterclaims.

## VI.     Conclusion

For the foregoing reasons, the Court DENIES Plaintiffs' motion to dismiss, D. 95, as to Cape Air's counterclaims.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge